IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* RENATA BLOCK, RENATA BLOCK, individually, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| DANILO V. DEL CAMPO, M.D., individually, DANILO V. DEL CAMPO, M.D., S.C., CHICAGO SKIN CLINIC, LTD., and CHICAGO SKIN STUDIO and PEARL DEL CAMPO, individually, | ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 08 C 2624

Magistrate Judge Nan R. Nolan

## MEMORANDUM OPINION AND ORDER

This *qui tam* action brought under the False Claims Act is before the Court on Defendants/Counter-Plaintiffs' Objections to Plaintiffs' attorneys having *ex parte* contact with present and former Del Campo patients. For the reasons stated below, Defendants' Objections [# 85] are overruled.

## BACKGROUND

Defendant Danilo Del Campo is a physician who practices dermatology and the president of Chicago Skin Studio. Plaintiff Renata Block is a physician assistant who was employed by Del Campo from about October 2003 until approximately March 2006. This case involves allegations that Defendants Del Campo and Chicago Skin Clinic with the aid and assistance of others knowingly and intentionally submitted false claims and otherwise sought reimbursement for services allegedly provided to Medicare and Medicaid patients which were based on fraudulently generated and false documentation in violation of the False Claims Act and Illinois law. The complaint alleges seven specific areas of alleged false claims filed by Del Campo, including improper billing of cosmetic procedures as Actinic Keratosis (precancerous growths), falsifying the

number of AK lesions treated, and falsely billing UVB light treatments as UVA or PUVA treatments. Defendants deny Plaintiffs' allegations of wrongful and fraudulent conduct.

Defendants have filed a counterclaim against Ms. Block and her husband, Robert Block. Defendants' first five counterclaims against Ms. Block allege: 1) fraud; 2) consumer fraud and deceptive trade practices; 3) intentional interference with prospective economic advantage; 4) tortious interference with contract; and 5) conversion. In their sixth counterclaim, Defendants allege conspiracy against Mr. and Ms. Block. The Blocks generally deny Defendants' allegations.

On September 24, 2009, the district court referred this case to this Court for resolution of Defendants' motion for protective order (doc. 40) and general discovery supervision. (Doc. 53). Defendants claimed a protective order was necessary because Plaintiffs were seeking a fishing expedition "through the files of Del Campo's approximately 25, 000 patients." (Doc. 40 at 3). After briefing by the parties, this Court imposed significant limits on discovery of patient records. (Doc. 69). In the end, approximately two hundred patient charts for patients who received, among other things, treatment for Actinic Keratosis and PUVA light treatments were produced by Defendants. In open court on November 16, 2009, Plaintiffs' counsel agreed not to contact Del Campo's present and former patients prior to meeting and conferring with defense counsel regarding the issue and until the Court could address any disagreements. (Doc. 69). Since that time, the parties have conducted certain written and oral discovery, including Defendants' production of the approximately two hundred patient charts.

Plaintiffs now seek to follow-up on the patient chart production with *ex parte* contacts and if the patients agree, interviews of up to ten percent of the AK and PUVA Medicare patients for whom charts have been produced to gather evidence to support their claims. Counsel have agreed to work together to draft a neutral script which both sides can use in their initial contact with a potential interviewee. In open court on June 17, 2010, the Court gave its initial thoughts on the patient contact issue but deferred ruling until Defendants had an opportunity to brief the issue and

provide authority supporting their position. Defendants now object to Plaintiffs' counsel independently contacting patients and former patients as well as the 10% figure proposed by Plaintiffs as unworkable, unduly burdensome, and manifestly unreasonable. The Court construes Defendants' objections as a request for a protective order. After thoroughly reviewing the parties' briefs, the Court now issues its final decision on the matter.

## DISCUSSION

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Rule 26 further provides that a court, upon a showing of good cause, may enter a protective order protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). Magistrate judges are granted broad discretion in addressing and resolving discovery disputes. Weeks v. Samsung Heavey Indus., Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997).

Defendants state in their written submission that "the parties **had already agreed** that any patient contacts should be conducted in a controlled, unintimidating environment (possibly Del Campo's office, which was presumed to be convenient and comfortable for the patients) with counsel for both parties present to make sure that the other party is not manipulating, harassing or unfairly attempting to 'spin' the patient's testimony." (Doc. # 85 at 10-11)(emphasis in original). Defendants also state that "it was generally agreed that counsel for both parties would participate in any interviews, clients would not be present, a general statement giving the reason for the interview would be discussed and agreed upon by the parties, and the parties would exchange and agree upon proposed questions to be asked to such patients during the interviews." Id. at 5. Finally, Defendants say that it was agreed "that the protocol had to include the joint participation of counsel for the parties." Id. at 8.

Defendants' suggestion that the Court is unilaterally imposing its own protocol for contacting patients on the parties which "radically deviate[s]" from the mechanism for interviewing patients which the parties had discussed and "tentatively agreed upon" (doc. 85 at 5) is without any basis in fact or the record. At the last status hearing on June 17, 2010, Plaintiffs' counsel orally requested permission to begin independently contacting and if the patients agree, interviewing up to ten percent of the AK and PUVA Medicare patients for whom charts have been produced. Defense counsel responded that both sides had been discussing a possible protocol for contacting patients but neither side indicated that an agreement had been reached. If an agreement had been reached on the manner and scope for contacting patients, this Court would not have requested briefing on that issue. Plaintiffs' brief confirms the Court's recollection. Plaintiffs' counsel Randall Gold participated in the discussions with defense counsel prior to the June 17, 2010 hearing. Mr. Gold states "unequivocally" that "various protocol concepts were raised and discussed between counsel [prior to the June 17th hearing, but] no agreement on any protocol was ever made or agreed to." (Doc. 86 at 9).

Despite suggesting that an agreed protocol for contacting patients existed before the June 17th hearing, Defendants also state that their counsel appeared at that status hearing expecting to be allowed to continue with further meet and confer attempts regarding the nature and manner of the proposed patient contacts. Defendants may have desired further meet and confer attempts on the issue, but this Court believed the better approach was to address any disagreements sooner rather than later given the firm deadlines in this case. The district court has set a fact discovery cut-off date of November 1, 2010 and has warned that "[t]his is a final extension." (Doc.. 81). For this reason, the Court set expedited briefing on Defendants' objections to Plaintiffs' proposed patient contacts and interviews.

After carefully considering the Defendants' concerns and balancing the importance of the patient information against the burdens of Plaintiffs' *ex parte* contact with patients, this Court overrules Defendants' objections. Defendants first contend that Ms. Block has not sufficiently demonstrated any factual support for her claims in order to proceed with further patient discovery. Defendants state: "Plaintiff has never been called to task to identify and or make an initial showing of the merits of her claims in order to proceed forward with her increasingly burdensome discovery." (Doc. 85 at 3). There is no requirement in the Federal Rules of Civil Procedure that Ms. Block support her claims with factual proof before being permitted to engage in further discovery. Moreover, Ms. Block has offered factual support for her claims – her complaint is "based on her direct and personal knowledge . . . acquired through her duties as Physician Assistant for Defendants, and her observations of and personal interactions with Del Campo . . . and other employees and staff members." (Doc. 1 at 12). While Defendants claim that there is no factual support for Ms. Block's claims, that is all the more reason why she should be allowed to contact and interview independent patient witnesses. Under Rule 26(b)(1), Ms. Block is entitled to discover any non-privileged matter that is relevant to her claims. The information Ms. Block seeks from Del Campo's patients meets this standard. Ms. Block seeks to ascertain if the patients had the recorded surgical procedures or the application of photo-sensitizing agents during light treatments as indicated in the patient files that have been produced. Accordingly, the Court will not delay efforts by counsel to contact patients until Ms. Block makes a showing on the merits of her claims.

Defendants' brief also references the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Defendants appear to object to the proposed patient contacts and interviews on the ground that patient interviews will damage patients' privacy expectations, which Defendants argue form the basis for HIPAA. HIPAA does not prohibit *ex parte* communications with nonparty patients and former patients about their alleged medical care and treatment. "HIPAA did not give

rise to a physician-patient or medical records privilege." U.S. v. Bek, 493 F.3d 790, 802 (7th Cir. 2007). Rather, HIPAA "create[d] a procedure for obtaining authority to use medical records in litigation." Northwestern Mem'l Hosp. v. Ashcroft, 362 F.3d 923, 926 (7th Cir. 2004). In this case, patient information has been disclosed in accordance with the procedures set forth in HIPAA. Paragraph (e) of § 164.512 governs disclosure of medical information during judicial and administrative proceedings. This section provides that a patient's record may be disclosed in response to a court order or, in the case of a subpoena or discovery request, when accompanied by satisfactory assurance that (1) written notice has been given to the patient allowing an opportunity to object or (2) a qualified protective order has been sought. 45 C.F.R. § 164.512(e). Here, the parties agreed to a qualified protective order and the district court entered it on June 19, 2009. (Doc. 39). In accordance with HIPAA, that protective order prohibits the parties from using or disclosing protected health information for any purpose other than in this litigation and requires protected health information be returned to the covered entity or destroyed at the end of the litigation. See 45 C.F.R. § 164.512(e)(1)(v).

The only other authority cited by Defendants, Northwestern Mem'l Hosp. v. Ashcroft, 362 F.3d 923 (7th Cir. 2004), does not justify prohibiting *ex parte* patient contacts and interviews. Citing Northwestern Memorial Hospital, Defendants assert that patient privacy concerns must be evaluated and that there is a "very real danger and risk to Del Campo's small neighborhood medical practice if word gets around that lawyers (strangers to the patients) are studying the patients' medical records, and interviewing and deposing patients regarding their private medical information." (Doc. 85 at 8). In Northwestern Memorial Hospital, the government subpoenaed medical records of certain patients who had late-term abortions at the hospital to support its challenge to the constitutionality of the Partial-Birth Abortion Ban Act of 2003. The Seventh Circuit affirmed the district court's order quashing the subpoena because the patients' privacy interests outweighed any probative value of the records sought. The appeals court stressed that the

government "had repeated opportunities to articulate a use for the records that it seeks, and it has failed to do so." Id. at 930. Unlike Northwestern Memorial Hospital, Plaintiffs have identified what they hope to gain from patient interviews and how that information is highly relevant to their claims. Plaintiffs' case centers on whether Defendants sought reimbursement for services allegedly provided to Medicare and Medicaid patients which were based on false claims. Plaintiffs need not accept at face value the facts presented by Defendants. Plaintiffs' counsel is entitled to ask patients whether they recall having the surgical procedures or the application of photo-sensitizing agents during light treatments which are recorded in Del Campo's files.

The Court is sensitive to Defendants' concern for the privacy rights of Del Campo's non-party patients. It may well be distressing and even embarrassing for patients to participate in this bitterly contested lawsuit, but Defendants have not shown that such concerns outweigh Plaintiffs' need for the requested patient information. Moreover, a patient witness may decline to participate in an informal interview. The Court also recognizes that Del Campo's professional reputation may suffer as a result of Plaintiff's accusations being spread among his patient base and his having to defend this case, but that harm also does not outweigh Plaintiff's right to seek highly relevant information to support her claims by contacting independent patient witnesses. The Court believes Defendants greatly exaggerate the possible harm to Del Campo's practice when they claim that the proposed 23 to 25 *ex parte* patient interviews will "destroy" Del Campo's medical practice. Defendants' characterization of Plaintiffs' proposal of *ex parte* patient interviews as inconsistent with cost-effective litigation also misses the mark. *Ex parte*, informal interviews will actually reduce the expense of pretrial discovery which would be incurred if present or former patients had to be formally deposed to obtain any information beyond what is in the medical records.

The parties disagree over the appropriate number of patients which Plaintiffs' counsel should be allowed to interview. Defendants have proposed that counsel jointly contact two of Del Campo's randomly selected PUVA patients and four of Del Campo's randomly selected AK

patients. While Plaintiffs need not have access to every patient, a sample size of six patients is not a meaningful sample. As a compromise, Plaintiffs limited their request to contacting up to only 10% of the AK and PUVA Medicare patients for whom charts have been produced. This amounts to approximately 23 to 25 patients and is a fair number. Defendants' suggestion of choosing interview candidates randomly makes no sense. Plaintiffs believe certain patient files contain more significant false information, and they are entitled to determine which patients and former patients they believe will likely support their claims. Defendants also argue that the proposed number of patient interviews exceeds the numbers of depositions permitted under the rules. This argument puts the cart before the horse. Rule 30(a)(2)(A)(i) puts a limit on the number of depositions, but a witness interview is not a deposition. Because Plaintiffs have not moved for any additional depositions, Defendants' concern regarding the allowable number of depositions is premature.

Plaintiffs say that to the extent that there exist former patients who no longer go to Del Campo there is no basis for any restriction in the number they can contact and interview. Plaintiffs claim that the 10% figure should not apply to such former patients as they no longer do business with or seek medical care from Del Campo. Plaintiffs are allowed to privately contact and if the former patients agree, interview the three former Del Campo patients who are now patients of Ms. Block's current employer and who were discussed at the June 17th hearing. Interviews of these three former patients will not count toward the 10% limit. On the current record, the Court is not making a decision regarding whether any other former patient interview will apply toward the 10% figure. Plaintiffs must raise the issue with the Court on a patient-by-patient basis.

One final matter requires attention. Defendants' repeated personal attacks on Plaintiffs and their counsel in their Objections are inappropriate and unfounded. Defendants' characterizations of Plaintiffs' and their counsel's motives and tactics go beyond the appropriate bounds of professional and zealous advocacy. Both parties' attorneys are expected to act in a professional and civil manner when dealing with one another and in their written submissions to the Court.

Finally, counsel for both sides are bound by ethical rules and the Court expects all counsel to be courteous and respectful when contacting patients and former patients of Del Campo.

**E N T E R:**

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: July 7, 2010**